**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

HOMER JAIME GRACIA, JR                                                                        PETITIONER
Reg. #33261-077

v.                                                      2:09-cv-00046-JJV

T. C. OUTLAW,
Warden, FCI-Forrest City                                                                      RESPONDENT

**ORDER**

**I.     BACKGROUND**

Petitioner is serving a 151-month sentence for Conspiracy to Possess with Intent to Distribute Methamphetamine and Aiding and Abetting, which was imposed by the United States District Court for the Northern District of Texas. Petitioner is currently housed at Federal Correctional Complex Low Security Institution (FCI Forrest City-Low) and is expected to be released from confinement on August 16, 2010. The present habeas action arises from an incident that occurred while the Petitioner was confined at the FCI Seagoville.

According to Senior Officer Rene Gonzales' incident report, the Petitioner came into his office on May 4, 2008, and asked Officer Gonzales if he passed by an x-rated video store on his way home. Officer Gonzales responded that he was not sure if he did or not. Petitioner then asked Officer Gonzales if he would like to make some money by going to the video store and buying him four movies. Petitioner then laid down $200.00 in cash and a list of four movies he wanted. According to the report, Petitioner also gave Officer Gonzales a DVD movie and asked him to play it on the computer. Officer Gonzales subsequently took the items and reported the incident immediately to the Operations Lieutenant. (Daniel R. Severson Declaration, Doc. No. 9, Att. 4).

Petitioner was then placed in the Special Housing Unit on May 4, 2008, and was provided

1

with a detention order and notified of the charges against him. ( Doc. No. 3 at 26). On May 5, 2008, Petitioner's property was searched and a list containing several of the same movie titles that Petitioner had given Officer Gonzales was found. (Severson Declaration, Doc. No. 9, Att. 4). A full investigation of this incident was not completed until June 20, 2008, because of a "pending possible involvement in an open Office of Inspector General Criminal Investigation." (*Id.*). The incident report charged Petitioner with Bribing an Official Staff Member, Code 216; Exchanging Money for Contraband, Code 217; and Possession of an Unauthorized Item, Code 305. (*Id.*). The incident report also contained a discussion of the statements made by Petitioner to the investigating lieutenant in which Petitioner admitted to possessing the DVD identified in an evidence photo sheet, but that he later gave it to another inmate. Petitioner also admitted to writing down a list of videos that was shown in an evidence photo, but denied writing the note depicted in another photo. (*Id.*).

A hearing before a Discipline Hearing Officer (DHO) was originally scheduled for June 23, 2008. (*Id.*). Prior to the hearing, Petitioner was advised he could ask for a full-time prison staff representative to represent him at the hearing. (*Id.*). Petitioner requested assistance from "Mr. Rhodes (case manager)." (*Id.*). According to Petitioner, the June 23, 2008 hearing had to be rescheduled because Petitioner's staff representative was unavailable. (Doc. No. 3 at 3). The rescheduled hearing took place on July 16, 2008. (*Id.*). Again, Petitioner's staff representative could not attend the hearing; however, Petitioner elected to waive his right to have a staff representative present and chose to proceed without staff representation at the meeting. (*Id.*).

At the hearing, Petitioner made a statement to the DHO stating he "never committed those acts." (Severson Declaration, Doc. No. 9, Att. 4). He also asserted that the DVD was given to him by another inmate and he was set up by the officer because Petitioner and the officer "had a run in about four years ago about [him] lying and gambling." Lastly, he argued that he "never gave [Officer Gonzales] an x-rated video or two hundred dollars and [that he does] not run with any

2

gangs." (*Id*.).

At the end of the hearing, after considering the evidence which consisted of supporting memoranda from two officers, including Officer Gonzales; the photos of the contraband; and the written documentation of the incident by the reporting staff member, the DHO concluded that the Petitioner committed the acts for which he was charged. The DHO concluded:

> [A]fter considering all the facts and evidence at the DHO hearing [the DHO] has made the determination that you committed the prohibited acts of Giving or offering an official or staff member a bribe, or anything of value, Code 216, Giving Money to, or Receiving Money from, any Person for Purposes of Introducing Contraband or for any other Illegal or Prohibited Purposes, Code 217, and Possession of Anything not Authorized, Code 305.

(Severson Declaration, Doc. No. 9, Att. 4).

As punishment, the DHO imposed sanctions, which are described as follows:

> On the Possession of Bribing Official Staff Member Finding, the DHO imposed sanctions of disallowance of Twenty-Seven (27) days Good Conduct Time, Thirty (30) days Disciplinary Segregation, One Hundred Eighty (180) days Loss of Commissary, One Hundred Eighty Days Loss of Visitation Privileges and a recommended Disciplinary Transfer to a More Secure Facility. On the Exchanging Money for Contraband finding, the DHO imposed sanctions of Twenty-Seven (27) days Good Conduct Time, Thirty (30) days Disciplinary Segregation, One Hundred Eighty (180) days Loss of Commissary, One Hundred Eighty (180) Days Loss of Telephone Privileges, One Hundred Eighty Days (180) Loss of Visitation Privileges. On the Possessing Unauthorized Item finding, the DHO imposed Thirteen (13) days Good Conduct Time, Fourteen(14) days Disciplinary Segregation, Ninety (90) days Loss of Commissary, Ninety (90) Days Loss of Visitation Privileges.

(Severson Declaration, Doc. No. 9, Att. 4, Ex. A).

After exhausting his administrative remedies, Petitioner commenced the present habeas corpus action. It appears that Petitioner is seeking expungement of his disciplinary record and restoration of lost good-time credit, based on three grounds:

(1) Erroneous evidence, namely a false report, was considered by the DHO in finding Petitioner guilty;

(2) His disciplinary hearing did not satisfy the procedural requirements of due process

3

because Petitioner was not allowed to view the investigation report of Officer Gonzales; and

(3) His disciplinary proceedings were procedurally defective because Petitioner did not receive a written copy of the misconduct report within 24 hours of the time the staff became aware of his involvement in the incident.

## II.   ANALYSIS

"Prison disciplinaries are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citations omitted). To comport with due process where a protected liberty interest exists in connection with a prison disciplinary proceeding, a prisoner must receive: (1) 24 hours advance written notice of the disciplinary charges; (2) an opportunity to call witnesses and present a defense; and (3) a written statement of the evidence relied upon by the fact-finder and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-67 (1974).

Due process also requires that the record contain "some evidence" to support the prison disciplinary decision. *Superintendent v. Hill,* 472 U.S. 445, 455-56 (1985). The relevant question "is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455 (emphasis added). This "some evidence" rule allows the federal courts to defer to the judgment of prison officials in maintaining discipline in their institutions while meeting constitutional requirements. *Id.* at 456. This limited review by federal courts does not require examination of the entire record, independent assessment of credibility of witnesses, or weighing of the evidence. *Id.* at 455. Prison officials can permissibly rely on conduct violation reports to find inmates guilty of disciplinary infractions. *Id.* at 456; *Hartsfield v. Nichols,* 511 F.3d 826, 831 (8th Cir. 2008); *Hrbek v. Nix,* 12 F.3d 777, 781 (8th Cir. 1993). A report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as "some evidence" upon which to base a prison disciplinary decision, if the violation is

found by an impartial decision-maker. *Hartsfield,* 511 F.3d at 831; *See also Hrbek v. Nix*, 12 F.3d 777, 781 (8th Cir. 1993) (*citing Hill*, 472 U.S. at 456)(even when there is substantial evidence to the contrary, the committee may find a guard's report to be credible and therefore take disciplinary action).

Petitioner now contends that the DHO relied on a false report in finding him guilty. He also argues that his due process rights were violated because he was not allowed to view the investigation report of Officer Gonzales. Petitioner makes a compelling argument to the Court, but after careful review of the incident reports and the evidence presented, the Court finds that the procedural due process requirements in *Wolff* were followed and there was "some evidence" to support the DHO's findings. Here, the disciplinary records reflect that Petitioner was notified of the disciplinary hearing on June 20, 2008. (Severson Declaration, Doc. No. 9, Att. 4). The disciplinary hearing was not held until July 16, 2008. (*Id.*). At the disciplinary hearing, Petitioner pleaded not guilty to the charges and was allowed to make a statement. (*Id.*). Petitioner did not request to call any witnesses or present any witness statements. (*Id.*). Petitioner was found guilty and was given a sentence which included loss of good-time credit as described in the factual history above.

It is clear from the DHO report that there was substantial evidence beyond just Officer Gonzales' report to find Petitioner guilty of the charged violations, including a statement from Lt. Farley; Petitioner's own admission that he possessed the DVD identified in the photo sheet and that he wrote the list of videos shown in the sheet; and the photos of the actual contraband. This evidence clearly satisfies the "some evidence" standard provided in *Wolff*. Petitioner provides no evidence to support his claim that Officer Gonzales wrote a false report.[1]

Furthermore, Petitioner is not entitled to view the investigation report in Officer Gonzales'

---

[1] *See Sprouse v. Babcock,* 870 F.2d 450, 452 (8th Cir. 1989) (filing of false disciplinary report against inmate is not itself actionable).

5

personnel file. First of all, it is unlikely that Petitioner would have been granted access to Officer Gonzales' personnel file.[2] Moreover, Petitioner never sought access to Officer Gonzales' personnel file prior to his disciplinary hearing. He appears to be relying on the argument that his staff representative would have had access to Officer Gonzales' personnel file and that the information in the file would have completely exonerated him. (Doc. No. 3 at 3-4). While Petitioner was aware of Officer Gonzales' expulsion from the BOP an entire month before he was served with the incident report, he failed to request the information. (Severson Declaration, Doc. No. 9, Att. 6 at 6). Lastly, given the extent of the other tangible evidence and the admission of Petitioner, this Court finds that the "some evidence" standard is satisfied and the DHO correctly found Petitioner guilty.

Petitioner's final argument is grounded on the BOP regulation found at 28 C.F.R. § 541.15(a), which states that "[s]taff shall give each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate, *ordinarily* within 24 hours of the time staff became aware of the inmate's involvement in the incident." 28 C.F.R. § 541.15(a) (emphasis added). In this case, the charged conduct took place on May 4, 2008, and Petitioner received the incident report on June 20, 2008. (Doc. No. 3 at 27-28). Petitioner contends that the delay in receiving the incident report prejudiced his ability to present a defense against the allegations against him.

It is apparent on the face of the regulation, through the use of the word "ordinarily," that the 24-hour provision does not create an inviolable time limit. The word "ordinarily" does not connote an absolute time limit, but merely provides a guideline for prison officials to follow. Nothing in the language of the regulation itself suggests that a disciplinary hearing must be voided if prison officials do not comply with the 24-hour provision.

---

[2] *See Robinson v. Reed*, 977 F.2d 586, 1992 WL 240269 at *2 (8th Cir. 1992)(concluding that district court was correct in deciding that "information contained in the personnel files of the Arkansas Department of Correction was confidential and releasing it could cause security concerns); *Donald v. Rast*, 927 F.2d 379, 381, *cert. denied*, 502 U.S. 827 (1991)(noting confidential nature of police officer's personnel file).

Even if § 541.15(a) did not include the word "ordinarily," Petitioner still would not be automatically entitled to a writ of habeas corpus simply because he was not provided with a written copy of the disciplinary within 24 hours. Habeas corpus relief is only available for a violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2241(c), 2254(a). "[T]here is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). In fact, any liberty interest "must be an interest in the nature of the prisoner's confinement, 'not an interest in the procedures by which the state believes it can best determine how he should be confined.'" *Id.* (quoting *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996)).

Furthermore, *Wolff* only requires that inmates receive written notice of the charges at least 24 hours before the hearing, not within 24 hours from the time the prison staff became aware of the incident. *See Wolff v. McDonnell*, 418 U.S. 539, 564 (1974) (written notice of the claimed violation must be given to the prisoner at least 24 hours prior to the hearing). Prison disciplinary actions that result in the loss of good-time credits must provide for the simple procedural safeguards provided in *Wolff*, supra. Nothing in *Wolff* suggests that § 541.15(a)'s 24-hour provision has any constitutional significance. In fact, federal courts have consistently rejected inmates arguments based on violations of 28 C.F.R. § 541.15(a). *See Stanko v. Rios*, 2009 WL 1066021 (D. Minn., 2009)(finding that § 541.15(a) does not require notice within the 24-hour period and due process only requires an inmate to receive notice of the charges 24 hours before the disciplinary hearing); *Sinde v. Gerlinski,* 252 F.Supp.2d 144, 149 (M.D. Pa. 2003)(finding no prejudice where inmate received the incident report eight months after its preparation because he received it more than 24 hours in advance of the disciplinary hearing); *Barner v. Williamson,* 233 Fed. Appx. 197, 199 (3d Cir. 2007) (stating that inmate had not shown that § 541.15(a) creates a liberty interest or that its violation "necessarily abridges the constitutional protections established in *Wolff*"); *Homen v. Hasty,* 229 F.Supp.2d 290,

296 (S.D.N.Y.2002) (finding no concerns where prisoner received notice about charges more than four months after an incident).

In this case, Petitioner has offered nothing but conclusory allegations that would allow this Court to determine that the outcome of his disciplinary proceedings might have been different had he received notice of the charges within the 24 hours provided in § 541.15(a).  Petitioner received notice of the charges 26 days before his actual disciplinary hearing.  This was ample time to provide for his defense.  He has not shown he was prejudiced in any way as a result of the delay in receiving notice of the charges.

### III.   Conclusion

For the foregoing reasons, Petitioner's Petition (Doc. No. 2) should be DISMISSED with prejudice and the relief requested  DENIED.

IT IS SO ORDERED this 22nd day of December, 2009.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE